

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2009R02380

271 Cadman Plaza East
Brooklyn, New York 11201

December 11, 2015

By ECF

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: United States v. HSBC Bank USA, N.A. and HSBC Holdings plc
           Criminal Docket No. 12-763 (JG)

Dear Judge Gleeson:

      The government respectfully submits this letter in opposition to Mr. Hubert Dean Moore, Jr.'s, motion to unseal the "First Annual Follow-Up Review Monitor Report" (the "Monitor's Report").[1]  Based on the legal analysis set forth in the government's June 1, 2015, letter to the Court ("the June 1 Letter") and the arguments contained therein, and the additional arguments and information contained here, the government asserts that the Monitor's Report should remain under seal.  The Court should deny Mr. Moore's request to unseal the Monitor's Report under common law and First Amendment analyses.  The Monitor's Report is not a "judicial document" to which the common law and First Amendment confer a right of access.  Should this Court conclude otherwise, the weight of the presumption of access to the Monitor's Report is minimal and competing law enforcement, regulatory, and privacy interests weigh in favor of keeping it under seal.

      Mr. Moore fails to articulate any new facts or legal arguments that would require this Court to unseal the Monitor's Report.  By his own account, Mr. Moore's disagreement with HSBC concerns the bank's residential mortgage business, a component of HSBC's business that the DPA and Monitor's Report were not intended to, nor do, in fact, address.  Moreover, Mr. Moore's contention that the Monitor's Report was provided to

---

[1] Although Mr. Moore has requested to unseal only the Monitor's Report, the government contends that the legal and factual analysis in its June 1, 2015, letter and *infra* should apply to all past and future reports created by the Monitor under the terms of the deferred prosecution agreement.

Bloomberg News, even if true, does not constitute a waiver of the government's argument opposing unsealing. Therefore, this Court should deny Mr. Moore's application to unseal the Monitor's Report.

I. Background

On December 11, 2012, the government filed a criminal Information charging HSBC Bank USA, N.A. ("HSBC Bank USA")[2] with violations of the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, namely, willfully failing to: (1) maintain an effective anti-money laundering ("AML") program in violation of 31 U.S.C. § 5318(h); and (2) conduct and maintain adequate due diligence on correspondent bank accounts held on behalf of foreign entities in violation of 31 U.S.C. § 5318(i). The Information also charged HSBC Holdings plc ("HSBC Holdings")[3] with willfully facilitating financial transactions on behalf of sanctioned entities in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1702 and 1705, and the Trading with the Enemy Act ("TWEA"), 50 U.S.C. App. §§ 3, 5, and 16.[4]

With the Information, the government filed a deferred prosecution agreement ("DPA"), which incorporates a statement of facts and a corporate compliance monitor agreement.[5] The DPA requires HSBC to retain an independent compliance monitor (the "Monitor") to ensure that it fulfills the terms of the DPA and implements recommended remedial measures. *See* ECF No. 3-2; ECF No. 3-4. The agreement requires the Monitor to prepare annual reports describing HSBC's compliance with the terms of the DPA, and specifically its compliance with the BSA, IEEPA, TWEA, and other anti-money laundering laws. *See* ECF No. 3-2; ECF No. 3-4   Recognizing that "public disclosure of the Monitor Reports could discourage cooperation, impede pending or potential government investigations and thus undermine the objectives of the Monitorship," the DPA states that the

---

[2] HSBC Bank USA is a federally chartered banking institution and subsidiary of HSBC North America Holdings, Inc. ("HSBC North America"). HSBC North America is an indirect subsidiary of HSBC Holdings plc.

[3] HSBC Holdings is the ultimate parent company of HSBC North America.

[4] HSBC Bank USA and HSBC Holdings are members of the "HSBC Group," which is comprised of financial institutions throughout the world ("HSBC Group Affiliates"). HSBC Group Affiliates are owned by various intermediate holding companies and ultimately, but indirectly, by HSBC Holdings, which is incorporated and headquartered in the United Kingdom. The government's letter refers to the HSBC parties as "HSBC."

[5] The government submitted these documents as exhibits to a letter requesting that the Court place this matter in abeyance for sixty months pursuant to the terms of the DPA and exclude that time from the period within which trial ordinarily must commence pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(2). HSBC joined in the government's application.

reports are "intended to remain and shall remain non-public" and are to be disseminated only to the government, HSBC's Board of Directors, the United Kingdom's Financial Conduct Authority ("FCA")[6] and the Board of Governors of the Federal Reserve System ("Federal Reserve").[7] ECF No. 3-4 at B-6, B-10, B-11.

In its Memorandum and Order of July 1, 2013, the Court held that its supervisory power includes the "authority to approve or reject the DPA" and "continued monitoring of [the DPA's] execution and implementation."[8] ECF No. 23 at 2, 13. The Court then approved the DPA and required the government to file quarterly reports with the Court "to keep it apprised of all significant developments" while the DPA is pending.[9] *Id*. at 2, 20.

The Monitor, who was selected by the government and HSBC, assumed his duties on July 22, 2013. ECF No. 26 at 1. On January 20, 2014, in accordance with the terms of the DPA, the Monitor issued his initial Monitor's Report to the government, the FCA, and the Federal Reserve. He submitted the second Monitor's Report—the document at issue here—on January 20, 2015.

On April 28, 2015, the Court ordered the government to file the Monitor's Report. The government submitted the June 1 Letter requesting to file the Monitor's Report under seal and appending a sealed copy.[10] ECF No. 35. With its submission, the government included supporting letters from the Monitor, Federal Reserve, FCA, Hong Kong Monetary Authority, and Bank Negara Malaysia. ECF No. 35-1; ECF No. 35-2; ECF No. 35-3; ECF No. 35-4; ECF No. 35-5. On the same date, HSBC joined in the government's application to file the Monitor's Report under seal. ECF No. 38.

---

[6] The FCA has a statutory objective to protect and enhance the integrity of the financial system of the United Kingdom. As such, the FCA is focused on, among other priorities, preventing the UK financial system from being used for criminal endeavors.

[7] The Federal Reserve is the consolidated supervisor of HSBC North America and the primary U.S. federal regulator of HSBC Holdings.

[8] The government disagreed with the Court's extension of supervisory power here arguing that the Court's role should be limited to considering the exclusion of time under the Speedy Trial Act. ECF No. 14 at 2 n.1; ECF No. 35 at 5. HSBC has argued the same. ECF No. 15 at 2.

[9] The government has duly filed all quarterly reports.

[10] While the government complied with Court's Order to file the Monitor's Report, albeit under seal, the government continues to assert that "the Court lacks any inherent authority over the . . . implementation of the DPA." ECF No. 23 at 8.

3

On November 5, 2015, Mr. Moore filed a letter with the Court that, by its Order of November 6, 2015, the Court construed as a motion to unseal the Monitor's Report. ECF No. 42. The Court ordered that any additional unsealing applications be filed by November 25, 2015, and that any opposition to such application(s) be filed by December 11, 2015. November 6, 2015 Order.

On November 24, 2015, Mr. Moore submitted a second letter to the Court, which Mr. Moore describes as an "addendum" to his letter of November 3, 2015.[11] ECF No. 43. Other than Mr. Moore's submission, no application to unseal the Monitor's Report has been filed with the Court.

II. Discussion

The common law and the First Amendment grant the public a qualified right of access to judicial records and proceedings. As set forth in the June 1 Letter, Mr. Moore's application does not meet the necessary legal standards to unseal the Monitor's Report because the Report is not a "judicial document" to which either doctrine confers a right of public access. Should this Court conclude otherwise, however, the weight of the presumption of access under the common law would be minimal and outweighed by the countervailing law enforcement, regulatory, and privacy interests at issue here.

   A. Mr. Moore Does Not Offer Any Facts or Legal Arguments to Support Unsealing the Monitor's Report.

The Court has not been presented with a compelling reason to unseal the Monitor's Report. Mr. Moore's application and the publicly available Consent Orders he references are silent with respect to HSBC's AML and sanctions compliance and relate solely to HSBC's residential mortgage business, an entirely separate line of business than is the subject of the DPA and Monitor's Report.[12] The Monitor's Report is intended to, and in fact does, relate solely to "the effectiveness of the internal controls, policies and procedures of [HSBC] as they relate to HSBC Group's ongoing compliance with the Bank Secrecy Act, International Emergency Economic Powers Act, Trading with the Enemy Act and other

---

[11] The letter was subsequently filed on November 30, 2015. The government's brief addresses both of Mr. Moore's written submissions to the Court.

[12] *See* Consent Order, OCC, In the Matter of HSBC Bank USA, N.A., McLean, VA, AA-EC-11-14, Apr. 13, 2011; Amendment to April 13, 2011 Consent Order, OCC, In the Matter of HSBC Bank USA, N.A., McLean, VA, AA-EC-11-14, Feb. 28, 2013; Consent Order Amending the 2011 Consent Order and 2013 Amendment to the 2011 Consent Order, OCC, In the Matter of HSBC Bank USA, N.A., McLean, VA, AA-EC-11-14, Jun. 16, 2015; Consent Order, Between HSBC North America Holdings, Inc. New York, New York and HSBC Finance Corporation Mettawa, Illinois and Board of Governors of The Federal Reserve System, Docket No. 11-022-B-HC/11-022-B-DEO (April 13, 2011).

applicable anti-money laundering laws . . . ." ECF No. 3-4 at B-1, B-2. Therefore, even assuming Mr. Moore's claims have merit, the Monitor's Report would not provide him with any information that would further resolution of his dispute with HSBC.

B. The Monitor's Report is Not a "Judicial Document."

As set forth in greater detail in the June 1 Letter, the Court should not deem the Monitor's Report a "judicial document" because it is not "relevant to the performance of the judicial function" here. *United States v. Amodeo ("Amodeo I")*, 44 F.3d 141, 145 (2d Cir. 1995). The Monitor's Report was not written to assist the Court in fulfilling any judicial role, but instead to provide the government and regulators with a measure of HSBC's compliance with the DPA terms. In cases in which the courts have deemed settlement-related reports "judicial documents," the circumstances have been meaningfully distinct from those here. First, the terms of the DPA and the Court's Memorandum and Order approving those terms do not contemplate that the Monitor's Report would ever be filed with or examined by the Court. *See S.E.C. v. Am. Intern. Grp.*, 712 F.3d 1, 3–4 (D.C. Cir. 2013) (finding that the independent consultant's reports were not judicial documents "because the district court made no decisions about them [] or otherwise relied on them"). By contrast, courts have deemed settlement-related reports "judicial documents" where they were filed with the court for judicial examination and, potentially, action. *See e.g.*, *Amodeo I*, 44 F.3d at 143 (where the court officer elected to apprise the court of her continuing investigation and file reports with it); *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 240 (2d Cir. 2014) (where the settlement agreement specified that the compliance reports would be filed with the court). Second, the monitorship here is independent of the Court; the DPA does not contemplate the Court's involvement in monitor selection or imbue the Monitor with judicial-like powers. *Cf. Erie Cnty.*, 763 F.3d at 240 (where the settlement agreement called for the court to select the monitor in the event of a dispute between the parties); *Amodeo I*, 44 F.3d at 143 (where the consent decree appointed a court officer to investigate alleged corruption and provided her with the authority to take sworn testimony and subpoena witnesses and documents).

Finally, the DPA sets forth that the government will have "sole discretion" to determine whether HSBC has breached the agreement and pursue prosecution. ECF No. 3-2 at ¶ 16. The Monitor's Report thus differs from the settlement-related "judicial documents" in the above-cited cases because the settlement terms here do not empower the Court to evaluate the defendant's compliance with the agreement and reinstate charges if necessary. *Cf. Amodeo I*, 44 F.3d at 146 (where the court officer's "progress reports" were germane to the "record" that the district court would consider in granting enforcement of or relief from any of the consent decree terms); *Erie Cnty.*, 763 F.3d at 240 (where the compliance reports "could form the basis for the District Court reinstating the civil proceedings *sua sponte* if the Court believes that the substance of the stipulated order of dismissal is not being fulfilled"). Here, by contrast, the Monitor's Report is solely a prosecutorial tool of the DPA, and it is irrelevant to the limited supervisory role that the Court has retained in this case.

5

C. Counutervailing Interests and Higher Values Weigh Against Public Disclosure of the Monitor's Report.

Should the Court find that the Monitor's Report is a "judicial document," however, it must weigh the presumption of access to it and consider the "countervailing interests" (under the common law) and "higher values" (under the First Amendment) that dictate against public disclosure, as outlined in the June 1 Letter and echoed by the Monitor, FCA, Federal Reserve, Hong Kong Monetary Authority, and Bank Negara Malaysia in their appended letters. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006); *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1049 (2d Cir. 1995). The weight attributable to the presumption of access to a "judicial document" is case-specific "and must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (citing *Amodeo II*, 71 F.3d at 1049). At one end of the "continuum" are documents "that directly affect an adjudication," *id.*, or that "are used to determine litigants' substantive legal rights," *id.* Examples of documents at this end of the "continuum" are "documents that have been submitted by a party in support of a motion for summary judgment that is granted," Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982), or that are introduced as evidence at trial, *United States v. Salerno (*In re CBS, Inc.), 828 F.2d 958, 960 (2d Cir. 1987). On the other end of the spectrum "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050.

Even under the higher burden imposed by the First Amendment presumption, see *Lugosch*, 435 F.3d at 126, the right of access to a document is rebuttable if sealing "is essential to preserve higher values and is narrowly tailored to serve that interest," *id.* at 120 (quoting In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). Whereas the government, HSBC, and multiple regulators have argued extensively that confidentiality of the Monitor's Report is vital to protect significant law enforcement and privacy interests, no compelling interest to unseal the Monitor's Report has been put forward. *Amodeo I*, 44 F.3d at 147 (finding that "[b]oth the claims of law enforcement privilege and privacy are proper concerns for a trial court in performing the balancing test required to determine whether access should be allowed or denied").

As described in detail in the June 1 Letter and its appendices, unsealing the Monitor's Report would jeopardize multiple law enforcement interests, including: realization of the monitorship's objectives, continued implementation of the DPA, the ability of HSBC's global regulators to fulfill their enforcement mandates, and the viability of other current and future monitorships. Providing public access to the Monitor's Report also risks informing criminals how to exploit weaknesses in HSBC's and other financial institutions' AML and sanctions compliance programs.

The cooperation of HSBC employees and banking regulators is vital to the Monitor's ability to effectively discharge his duties under the monitor agreement. Release of the Monitor's Report risks chilling the ongoing and future cooperation of these parties. *See*

6

*e.g.*, *Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1050 (holding that "[i]f the release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access"). The Monitor, FCA, and Hong Kong Monetary Authority have all predicted that public release of the Monitor's Report could stifle the vital participation of bank employees and whistle blowers worried about repercussions. *See e.g.*, ECF No. 35-1; ECF No. 35-2; ECF No. 35-3; and ECF No. 35-4.

   According to the Monitor, "many jurisdictions already visited by [his] team in 2013 and 2014 only agreed to allow access when they were given express assurances that the outputs of his assessments would remain confidential," and "[i]f the Monitor Report was made public, there is a significant risk that these jurisdictions … would refuse" to grant his team access in the future. ECF No. 35-3 at ¶ 20(a). Indeed, the Monitor has informed the government that such an impasse is developing in a foreign jurisdiction in which he is currently working. That jurisdiction is closely following these proceedings and has advised the Monitor that, if the Court orders unsealing of the Monitor's Report, it may instruct HSBC in that country to retract access to confidential information already provided to the Monitor and withhold such information going forward. That country's authorities have also warned the Monitor that they may withhold approval of the next report's release, thus requiring the Monitor to redact or remove significant portions of the next report prior to providing it to the government, FCA, and Federal Reserve.

   Because the Monitor serves a similar role for the FCA and the Federal Reserve, release of the Monitor's Report could likewise compromise their objectives. The Monitor's Report is designed to address the overlapping settlement agreements of HSBC with the government, FCA, and Federal Reserve, and it therefore integrates information, analysis, and findings related to HSBC's agreements with all three authorities. The FCA states that release of the Monitor's Report could negatively impact the Monitor's performance and frustrate "the FCA's market integrity objective." ECF No. 35-3 at ¶ 20(a). Similarly the Federal Reserve's letter to the Court enumerates multiple ways in which public disclosure of the Monitor's Report could compromise its objectives. *See* ECF No. 35-2.

   Release of the Monitor's Report could negatively impact law enforcement efforts in future cases. U.S. and foreign regulators may deny access to government monitors if there is a valid concern that information acquired from such access will become public and impair their regulatory objectives. Resolution of such cases would be slowed because regulators would be less willing to align interests with the government and share efficiencies. The government's law enforcement efforts in this case, ongoing cases, and future cases could be further disadvantaged by the Monitor's Report's identification of the vulnerabilities in HSBC's AML and sanctions compliance program and similar weaknesses at other banks. ECF No. 35 at 11; ECF No. 35-1 at ¶ 12; ECF No. 35-2 at 3; ECF No. 35-3 at ¶ 21-23; and ECF No. 35-4 at 2.

   Moreover, privacy interests of innocent third parties—here, HSBC employees, bank customers, and whistle blowers—"should weigh heavily in a court's balancing

equation." *Amodeo II*, 71 F.3d at 1050–51 (quoting *Gardner et al. v. Newsday*, 895 F.2d 74, 79–80 (2d Cir. 1990)); *see also Lugosch*, 435 F.3d at 120; *United States v. Belfort*, No. 98-CR-0859, 2014 WL 2612508, at *3 (E.D.N.Y. Jun. 11, 2014) (Gleeson, J.) (same). Here, where documents like the Monitor's Report are "traditionally considered private rather than public," courts accord more weight to an assertion of privacy. *Amodeo II*, 71 F.3d at 1051; *Belfort*, 2014 WL 2612508 at *4. Furthermore, concern over their employees' and customers' privacy interests could disincline companies to enter DPAs in ongoing and future cases.

Sealing the entire document is the most "narrowly tailored" way to "preserve [the] higher values" at stake here. *See Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1053 (finding that "[p]artial redaction appears not to be a viable remedy"). Redaction would not resolve the legitimate law enforcement and privacy concerns previously expressed by the government, the Monitor, and HSBC's regulators.[13] Moreover, the Monitor's Report is over 1000 pages long, is based largely on witness interviews, and contains "hearsay," *Amodeo II*, 71 F.3d at 1052 (quoting *United States v. Charmer*, 711 F.2d 1164, 1170–71 (2d Cir. 1983)), and "unsworn" "accusations," *Amodeo II*, 71 F.3d at 1052. Redacting the Monitor's Report is infeasible and risks rendering it "mislead[ing]" and "unintelligible." *Amodeo II*, 71 F.3d at 1052.

D. Alleged Leak of the Monitor's Report Does Not Constitute a Waiver.

The government is not aware of any official disclosure of the Monitor's Report to the press or public. *See Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir. 1999) (finding a disclosure is not "official" if it is "made by someone other than the agency from which the information is being sought"). Thus, even if Mr. Moore's allegation that Bloomberg News obtained a copy of the Monitor's Report is accurate, *see* ECF No. 42 at 1, the government's foregoing arguments are not waived, *Amodeo I*, 44 F.3d at 147 (finding that the district court erred in discounting the privacy claim against release of the court officer's report because a memorandum was issued to the press about findings therein). Indeed, the government has been careful to limit distribution of the Monitor's Report to a small number of employees and has taken care in drafting the quarterly reports to avoid any contention that it has officially disclosed the Monitor's Report.

---

[13] The government reincorporates by reference the arguments previously raised for why redaction in this case is neither appropriate nor feasible. ECF No. 35 at 12–13; ECF No. 35-1 at ¶ 13; ECF No. 35–3 at ¶ 24; ECF No. 35-4 at 2; and ECF No. 38 at II.

III. <u>Conclusion</u>

   For the reasons set forth above and in the June 1 Letter, the government respectfully requests that the Court maintain the Monitor's Report under seal. The common law and First Amendment do not compel unsealing of the Monitor's Report, and Mr. Moore has not raised any arguments that dictate otherwise.

         Respectfully submitted,

         ROBERT L. CAPERS
         United States Attorney

By:    /s/
         Daniel S. Silver
         Assistant U.S. Attorney
         (718) 254-6034

         M. KENDALL DAY
         Chief, Asset Forfeiture and Money
         Laundering Section
         Criminal Division
         United States Department of Justice

By:    /s/
         Laura Billings
         Trial Attorney
         Money Laundering & Bank Integrity Unit
         (202) 305-1245

cc:  Counsel for Defendants (via ECF)