4 pages

December 31, 2015

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  JAN 0 5 2016  ★

BROOKLYN OFFICE

The Honorable Judge John Gleeson

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, NY 11201


Re: Docket Number 12CR763

Dear Judge Gleeson,

I am writing to respond to both HSBC's Counsel (Sullivan and Cromwell, LLP [S/C]) and the U.S. Department of Justice, [DOJ] on my motion to unseal the Monitor's report. As both S/C and DOJ represent opposing points of view, but with respect to my motion, they are joined; I feel like a very small boat in a very large ocean.

While Counsel for both organizations have laid out their points against the unsealing of the Monitor's report- my request to the Court- both Counsel have missed several not so obvious points. While opposing Counsels represent different constituents, they both want the same outcome, i.e. to keep the Monitor's report sealed. I can understand why S/C wants to keep the report sealed, as they represent HSBC, but I am having difficulty understanding why the DOJ continues in this pursuit, in essence to hide what has happened "behind closed doors". Moreover, my request was to review the Monitor's report, in as much, to see where the controls were / are in place by HSBC, as they have been deemed inadequate to govern their current business practice, "... Whereas, the Bank is in continuing noncompliance with and violation the Consent Order, and continues to engage in unsafe and unsound business practices."(OCC 2015-06)[Office of the Comptroller of the Currency, OCC].

Further to this, the OCC issued an amended consent order (2015-063), which enumerated forty-five (45) areas where HSBC was not in compliance with the previously issued consent decrees and / or Cease and Desist orders. Additionally, HSBC's behavior was so egregious that OCC published all ninety-eight (98) actionable items from the original complaint to further document all of the areas that had been brought to HSBC's attention, and they had still failed to complete these tasks.

Counsel for S/C makes several statements concerning the invitation for other parties to join in my request to open the Monitor's report. As no one else asked to join, Counsel has opined that as no other party has joined with me, there must not be a good reason to unseal the Monitor's report; in essence an attempt to make my request a mote point by having it invalidated. What Counsel fails to report is the

request was made on the PACER system ONLY, which eliminates the vast majority of the US population from seeing said request. As an example, PACER has approximately 1 million members, which are composed of individuals, firms, etc., as well as those individuals that are "cross overs", i.e. members who have private accounts and also maintain a corporate presence. Given that the US adult population (2014 census estimate) is approximately 319 Million, that equates to a "population" who could see, not to mention join, at 0.3% of the total US adult population. Clearly, both the S/C and DOJ Counsel have a different view of "population" that me. In light of the fact that HSBC is the 3rd largest Banking firm in the world (Global Finance Magazine, November 2015), this number seems very different than one would expect.

Legal cases cited by S/C and / or DOJ for their position(s):

a.  "Judicial Document" argument:

DOJ prefaced their argument concerning the opening of the Monitor's report around the "judicial document" status of said document. This has already been decided in the *Amodeo* case and should not be re-visited. In the *Amodeo* case, the Monitor voluntarily met with the Judge on the case to review sensitive material, *in camera*, due to the nature of the information. The current case is very different, in light of the fact that the Court has required quarterly updates, so as to track HSBC's progress. As such, since Court required the Monitor's report and subsequent quarterly reports to gauge the progress of HSBC's compliance with the DPA, the reports are court mandated, and therefore are indeed "judicial documents".

b.  *United States v. Amodeo*

Additionally, as both S/C and DOJ have argued against my request, citing *Amodeo,* as the primary reason. It would appear that both S/C and DOJ have not fully reviewed the original case, with respect to *Amodeo,* as the case opinion was originally written to protect confidential informants and witnesses to federal crimes, against bodily harm. Further, if *Amodeo* is the basis for said rebuttal to my argument, logic tends to move that anyone who testifies against, or provides materials to the Monitor for the purpose of testifying against HSBC, then why doesn't DOJ file RICO violations against HSBC? Indeed, the Monitor in the *Amodeo* case feared for the individuals who provided testimony against the union local. If DOJ feels the need to invoke this case, then it follows that DOJ must be aware of criminal activities, or potential criminal activities, that are occurring at HSBC. Further, if DOJ is aware of crimes being committed at HSBC, it is obligated to report such findings to the Court. The DPA does not give HSBC *carte blanche* to commit crimes after the date of the DPA. [Note: while it is expressly written that DOJ has the right to charge an induvial for a crime, not the Court; the Court has some latitude with regards to the DPA.] Additionally, HSBC has already admitted to money laundering for various criminal organizations, both State-Sponsored and individuals. These acts could easily meet the requirements set out in 18 U.S.C. § 1961, including the 2 acts over a 10 year span. If you consider all of the money laundering issues as

a single (1) occurrence for the sake of a RICO filing, then the second area to investigate could also include bankruptcy fraud. In the same vein, as HSBC provided a conduit for monies from drug trafficking (and its' associated crime) to be dispersed, the "Continuing Criminal Enterprise" clause could also be in play.

    *c.   United States v. Belfort*

This case sited was to, in essence, demonstrate that the court records could not be redacted, in such a way as to render them usable to the people. A visual inspection of the specific case record demonstrates quite the opposite. While the dollar amounts are redacted, the actual case is laid out for all to see. This "transparency" allows everyone with a vested interest to review the case and come to their own conclusion.

2.   Other arguments put forth by S/C and DOJ
    a.   On several occasions, both S/C and DOJ make a circular argument as to why the Monitor's report should not be opened. For example, both Counsels make a similar set of arguments:
        i.   HSBC admitted in the Statement of Facts that they broke the law, with respect to money laundering and banking fraud
        ii.   HSBC "promised" to clean up the way they do business
            1.   Side note: over 700 days ago to fix these problems,
            2.   I was given less than 45 days for individuals to join me in the request to open the Monitor's report,
        iii.   Counsel now argues that any release of the Monitor's would enable "bad guys" to exploit the holes in the monetary controls of HSBC
            1.   The same holes that were supposedly fixed over 700 days ago

These statements, taken individually, could be construed as a cohesive argument; however, when taken together, the totality of the argument rapidly falls apart. In essence, both Counsel for DOJ and S/C are making a circular argument. Additionally, nowhere does either Counsel address the concept that:

3.   If "bad guys" previously used HSBC as the clearing house for ill gotten gains, what would prevent or preclude them from doing so now or in the future? Especially in light that HSBC is so far behind on the controls in other areas, i.e. mortgages

Counsel for each have gone to great lengths to show the Monitor's report as a "global" review, with the corresponding letters from various other government treasury agencies. In doing so, they have looked at my request through a very narrow prism, i.e. solely about a mortgage loan modification. What neither Counsel has addressed is the letter (anonymous), Document 16, filed on 2/14/2013. This document specifically refers to and ties together the AML, control, and mortgage issues. (example: page 2, reference to "liar loans" made by HSBC).

With respect to S/C's assertion that my request to open the Monitor's report will "damage the relationship" between the parties, my initial response is blunt..."so....", as in "justice delayed is justice denied." I don't remember surrendering my constitutional rights, but I am somewhat dismayed that Counsel for both S/C and DOJ are happy to surrender them for me. Additionally, S/C has a relevant interest in protecting their client from any potentially embarrassing disclosures, while at the same time DOJ has a relevant interest in keeping the document sealed, as the current AG has a significant interest in the DPA. Given the weight of the parties involved, it is clear to see why any revelations in the Monitor's report could be viewed as a potential embarrassment to both HSBC and the DOJ.

If both Counsel at S/C and DOJ are concerned with the international implications of the release of the Monitor's report, and they also don't want a redacted version opened up, one must question why. A simple way to alleviate these concerns is to confine the review of the controls of HSBC to those activities that took place within US boundaries. The reason I mention the "controls" again, is that this has been the basis for my request from the start. To bolster this argument, OCC has issued multiple reports that document serious control issues at HSBC US- which is in OCC's area of review.

As a final comment as to the overall nature of both S/C and DOJ's comments concerning the various legal machinations to avoid opening the report, several other areas that were brought up by me, but answered by either Counsel need to be addressed. For example, on multiple occasions both Counsels (S/C. DOJ) make repeated reference to my request (as "public") not outweighing the "significant consequences". However, Counsel for S/C has the right to petition the OCC to remove any of the Control failures, once they are verified as complete- to date HSBC has made no such request. Also, DOJ makes the assumption that unsealing the report would be "potentially damaging" to the Monitor's on-going work with foreign governments. As DOJ is specifically referring to "global" law enforcement efforts, my comments from above should apply and be seen as a "work around", in that only the US affiliate and its' actions would be involved- thereby eliminating the "global" argument.

Additionally, I would like some latitude in reaching out to several individuals- private citizens- who are named in the multitude of Court documents. After I discuss several areas with them, I will be prepared to send any additional information that will give additional support for my motion.

In summary, I don't feel that either S/C or DOJ made a substantial argument against my motion, as the cases they cited are either not relevant in the context of this case or are overly broad, as to wipe away any chance of getting to the heart of the matter.

Thank you for your time.

All the Best,

Dean

Hubert Dean Moore, Jr.