*Total : 42 pages.*

**BY FAX AND MAIL**

**FAX 0011 718 613 2456**

January 15, 2016

John Gleeson USDJ
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  JAN 2 0 2016  ★

BROOKLYN OFFICE

*12 CR763*

Dear Judge Gleeson,

I wrote to you previously in June 2015. My document is filed in the case against HSBC as
1:12CR00763, with all of the sub-parts. My letter is listed as Document 39, filed by the Court
on June 5, 2015.

On January 12 2015, I have had to file papers in the High Court in Hong Kong for Master H Au
- Yeung showing that The Hong Kong Banking Corporation Ltd in Hong Kong did supply false
and misleading information to the High Court in their Creditors Bankruptcy Petition dated
November 22, 2013 (please see the attached and supporting documents filed with the High
Court in Hong Kong.

I believe False and Misleading Statements to the Hong Kong High Court should be brought to
your attention as a potential breach of the Deferred Prosecution Agreement.

On July 4, 2014, I reported The Hong Kong Banking Corporation Ltd in Hong Kong to the Hong
Kong Monetary Authority for providing false and misleading information to the Hong Kong
High Court amongst other banking conduct breaches. The Hong Kong Banking Corporation Ltd
has also provided false and misleading information to the Hong Kong Monetary Authority.

On December 15, 2015 I received information from The Hong Kong Banking Corporation
Ltd (after making repeated requests) that show that The Hong Kong Banking Corporation Ltd
had supplied the High Court in Hong Kong with false information to obtain their Creditors
Bankruptcy Petition.

With reference to HSBC Holding plc and the HSBC Group commitment to wherever they have
the highest standards they will practice these standards throughout the world.

With respect to my Official Complaints to the Hong Kong Monetary Authority HSBC Holdings
and the HSBC Group have not yet adequately dealt with Allegations 1- to 11 which include 58
alleged breaches of FCA's Regulation PRIN 2.1 The Principles.

That is, if the FCA has among the highest standards in the world, these alleged 58 breaches have not yet been addressed.

The documents are;

- Letter to Master H Au-Yeung dated January 15, 2016.
- Brief History.
- A Summary of our Banking Facilities with HSBC
- Statutory Demand dated May 23, 2013
- Letter from HSBC dated December 15, 2015
- Letter from HSBC dated April 2, 2015
- Creditors Bankruptcy Petition dated November 22, 2013
- Bankruptcy Order

Kind regards

Colvin

Colvin Brown FCPA, JP
(852) 62281633

Level 10 Units 5 and 7
Wing Fung Ind. Bldg.
40-50 Sha Tsui Road
Tsuen Wan N.T.
Hong Kong.

**For the attention of Master H Au-Yeung.**

**January 12, 2016**

**High Court Registry**
**Address: LG 1, High Court Building, 38 Queensway, Hong Kong**

**Dear Master Au-Yeung,**

I was advised by your clerk that I should write directly to you.

I am asking the Court to set aside the Bankruptcy Order based on the Creditors
Bankruptcy Petition filed by The Hong Kong Banking Corporation Limited
(HSBC) under Bankruptcy Case HCB 1067/2014.

I state to the Court I have only received the information by letter from HSBC
paragraph 14 on the 15 December 2015, showing The Hong Kong Banking
Corporation Ltd did file false and misleading information to the High Court, to
obtain the Order fraudulently.

The facts for the Order to be set aside:

1. That the Hong Kong Banking Corporation Ltd did knowingly and willfully
   file false and fraudulent information to the High Court, in their Creditors
   Bankruptcy Petition dated November 22, 2013. I refer to 1 (a) below.

2. The Hong Kong Banking Corporation Ltd stated in their Statutory
   Demand dated May 23, 2013 that the creditor (The Hong Kong Banking
   Corporation Ltd) had no security. The Hong Kong Banking Corporation
   Ltd was fully aware that there was security. Therefore The Hong Kong
   Banking Corporation Ltd was fully aware this information was false and
   fraudulent. I refer to 2(a) below

We are asking the High Court to set aside the Order as The Hong Kong Banking
Corporation Ltd illegally obtained the Order.

It is my personal belief that The Hong Kong Banking Corporation Ltd made both

my wife and I bankrupt and the company bankrupt by knowingly providing false evidence to the High Court.

Further details with evidence for the Order to be set aside:

2 (a) That The Hong Kong Banking Corporation Ltd did knowingly and willfully file false information stated in the Creditors Petition Bankruptcy Petition November 22, 2013 with the High Court with respect to security.

2(b) That The Hong Kong Banking Corporation Ltd knowingly filed false information concerning the amount owing. The Hong Kong Banking Corporation Ltd stated in the Creditors Petition Bankruptcy Petition to the High Court on the November 22, 2013, that the debt owing was HK$9,913,683.09.

Before filing the Creditors Petition Bankruptcy Petition case with the High Court The Hong Kong Banking Corporation Ltd had requested on September 3, 2013 from its insurance subsidiary that two insurance policies be surrendered on September 2013.

On September 9, 2013 The Hong Kong Banking Corporation Ltd received payments of US$ 332,902.31 and US$ 245,737.51 respectively, totaling payments of US$ 578,639.82.

As the Hong Kong Banking Corporation Ltd had received US$ 578,639.82, The Hong Kong Banking Corporation Ltd had filed false statement of facts to the High Court and Fraudulently claimed for more money than they were owed.

I therefore ask the Court to set aside the decision in granting the Order for myself Colvin Morton Brown to be adjudged bankrupt as the Order was obtained by The Hong Kong Banking Corporation Ltd filing false information in the Creditors Petition Bankruptcy Petition.

2 (a) The Hong Kong Banking Corporation Ltd stated in their Statutory Demand dated May 23, 2013 that the creditor The Hong Kong Banking Corporation Ltd held no security.

Yet The Hong Kong Banking Corporation Ltd received payments September 9,

2013 of US$ 332,902.31 and US$ 245,737.51 respectively, totaling payments of US$ 578,639.82.

The Hong Kong Banking Corporation Ltd Stated in the Creditors Bankruptcy Petition that The Hong Kong Banking Corporation Ltd does not hold any security.

When The Hong Kong Banking Corporation Ltd had held two policies under its control at all times as security against the loan and did surrender such policies by letter dated September 9, 2013.

On the September 9, 2013 The Hong Kong Banking Corporation Ltd did receive payments of US$ 332,902.31 and US$ 245,737.51 respectively, totaling payments of US$ 578,639.82.

After the September 9, 2013 any claim stating the sum of money owing HK$9,913,683.09 is a fraudulent claim by The Hong Kong Banking Corporation Ltd.

We ask Master H Au-Yeung of the High Court to refer the fraudulent behaviour of The Hong Kong Banking Corporation Ltd to the Commercial Crime Bureau for an investigation

Should the Court need further information, I can provide further evidence and background information concerning the conduct of the management of our account by the Hong Kong Banking Corporation Ltd.

In summary, The Hong Kong Banking Corporation Ltd destroyed my business.

After this The Hong Kong Banking Corporation Ltd. had my wife (a Hong Kong born, Australian trained Anaesthetist specializing in neuro- surgery) and myself declared bankrupt because of personal guarantees on loans to our business in Hong Kong which was callously and irresponsibly destroyed by HSBC.

At the request of The Hong Kong and Shanghai Banking Corporation Ltd, we introduced new money into our business as working capital and informed The Hong Kong and Shanghai Banking Corporation of this on May 6, 2013 only for

The Hong Kong Banking Corporation Ltd, to take no notice of this but instead it froze our accounts and then closed them over a period of two weeks and commenced destroying our company and succeeded by the end of May 2013.

Presenting at the Creditors Bankruptcy Hearing on April 23, 2014 a Creditors Bankruptcy Petition that stated the sum of HK$9,913,683.09 was due and there was no security when security in the amounts of US$332,902.31 and US$245,737.51 had already been seized and paid in part settlement of the amount outstanding on September 9, 2013.

Holding three Court hearings on my account without reasonably informing me and not enabling me to attend Court and defend myself and my wife when at all times it could easily have contacted me using the methods it had previously used for many years.

## Official Complaints to the Hong Kong Monetary Authority

I have filed an Official Complaint with the Hong Kong Monetary Authority (HKMA) and have filed an Official Complaint against Mayer-Brown JSM with the Hong Kong Law Society. I have kept the Law Society Official Complaint in abeyance just now.

The Official Complaint to the HKMA was filed on July 4, 2014. In much of my correspondence with the HKMA and copied to HSBC I have constantly stated that the documents filed with the High Court were deliberately false and misleading.

Through the HKMA I have tried many times to get a reconciliation of the amounts due including the life policies held by HSBC as security but HSBC would deliberately not provide one.

However I was very specific in my last request on October 16, 2015 to the HKMA which was forwarded to HSBC and on December 15, 2015 for the first time since mid-2013, The Hong Kong Banking Corporation Ltd finally confirmed that it had been holding directly under its control the surrender value of life insurance policies on both my wife and myself as security on part of our

company's banking facilities and had seized those funds on September 9, 2013.

We also ask that the High Court to order the Commercial Crime Bureau to investigate The Hong Kong Banking Corporation Ltd for supply false information to the High Court and making a fraudulent claim.

## No Notice of Any Court Hearings

HSBC made no attempt to inform me of any Creditors Bankruptcy Petition or Court Hearings and I was as a consequence not able to defend myself or my wife in Court.

I have now found out that HSBC held three hearings relating to the process of me being declared bankrupt without me being informed of any of these Hearings. I was not advised of anything, even though I was in Hong Kong in all that time and could have easily been contacted by HSBC by email, or by contacting any of my acquaintances who HSBC knew were acquaintances of mine or even, incidentally, the Head of HSBC in Hong Kong, Peter T S Wong who has my email address and senior Executives Mark McKeown and Donna Duke.

If I had been able to attend any of these three Court Hearings I would have been able to highlight the circumstances of the debt arising itself and the false and misleading statements in the documents as to incorrect amounts and security.

Brief circumstances of the debt are explained in the Attachment, A SUMMARY OF OUR BANKING FACILITIES.

As a result of these deliberate false and misleading statements and lack of any notice of any High Court Hearings and any notice of the existence of any Bankruptcy Petitions HSBC was able to attend High Court Hearings without me being present to defend myself and my wife and we were both declared bankrupt and have suffered very significant damages in terms of reputation and ability to survive; and now neither of us have the ability to earn a living.

## Statutory Demands and Creditors Bankruptcy Petition

For the record the Statutory Demand dated May 23, 2013 makes the following statement. "The creditor claims that you owe the sum of HK$9,913,683.09, full particulars of which are set out on pages 2 and 3, and that it is payable immediately and, to the extent of the sum demanded is unsecured." See Statutory Demand attached.

Please note that this Statutory Demand makes no reference to the fact that the total sum claimed of HK$9,913,683.09 included the total amount of HK$5,371,945.40 which was paid by HSBC on behalf of myself and my wife on two prepaid insurance policies arranged by HSBC. This amount represented prepaid insurance premiums and the related surrender values of the policies were always available as security and under the sole control of HSBC.Please see HSBC's letter dated April 2, 2015 paragraph 2.2 and HSBC's letter dated December 15, 2015 paragraph 14.

The Creditors Bankruptcy Petition dated November 22, 2013 stated that a Statutory Demand was sent to my previous address in May Road on November 1, 2013 when HSBC knew full well that I had had to move out of that flat many weeks earlier because of the fact that HSBC destroyed my business and took all our ready cash and my ability to meet daily expenses including rent. When it would have been very easy to contact me as mentioned above.

## Confirmation of False Statements to the High Court by HSBC

As you may imagine it has been quite difficult dealing with this case in Hong Kong because of obstruction by HSBC. But for the first time in nearly three years HSBC on December 15, 2015 effectively confirmed it filed false and misleading documents to the High Court of Hong Kong and to the Hong Kong Monetary Authority ("HKMA") and others including myself and my wife, by providing us with the dates and amounts HSBC paid the money to itself from the surrender of insurance policies it had always held as security.

When it claimed to the High Court it did not hold any security.

The Creditors Bankruptcy Petition filed with the High Court on February 13, 2014 contained the following false and misleading statements.

- The Petition stated that there was no security when security did exist and was under the control of HSBC in the form of surrender value of the two life insurance policies up and until September 9, 2013 and at that date was used to pay down the amount outstanding as stated in the Bankruptcy Petition at May 23, 2013 of HK$9,913, 683.99 by US$ 332,902.31 and US$245,7373.51 sic (or in Hong Kong dollars the sum of HK$ 4,513,390.50) (HSBC's letter dated December15, 2015 paragraph 14).

- The Petition stated "that we do not, nor does any person on our behalf hold any security on the estate of the Debtor, or any part thereof, for the payment of the above mentioned sum." The above mentioned sum was stated as HK$9,913, 683.99 when on September 9, 2013 more than six months earlier HSBC had called on the security it was holding to reduce the sum by HK$4,513,390.50. (With the unexplained missing amount of HK$858,555.40 yet to be accounted for).

- The Petition as filed on February 14, 2014 stated the Debtor (me) is justly and truly indebted to the Petitioner in the sum of HK$9,913,683.99. This is a false and misleading statement.

- In addition to the amount of security received and paid off, the amount paid off the amount due has an unexplained missing amount of HK$858,555.40. The missing HK$858,555.40 referred to is the difference between the sum paid by HSBC on behalf of my wife and myself as insurance premium (HSBC's letter dated April 2, 2013 paragraph 14 and the sum received back from the insurance policiesand set off against the amount outstanding on September 9, 2013 of HK$4,513,390.50. (HSBC's letter dated December 15, 2015 paragraph 14)

- The last page of the Creditors Bankruptcy Petition was addressed to me and states I needed to take notice and file a defense against the Petition by April 20 2014 but HSBC did not provide me with any notice of that when it would have been very easy to do so as mentioned above. So how could I file a defense?

- The Petition was heard on April 23, 2014 but HSBC did not inform me of that when it would have been very easy to do so as mentioned above.

- I received no notice that I had been declared bankrupt when it would have been very easy to provide me with notice. I later found out about it when I was given a free copy of a handout tabloid The Standard and I saw my name there.

I believe HSBC will have used the same language to have my wife declared bankrupt but I have not so far been able to obtain the documents relating to her case. But her case will no doubt parallel mine.

## Government Secured Loans

And HSBC had additional security on the Government Secured portions of the loans amounting to around HK$2 million to HK$3 million.I do not have the exact numbers.

So at all times HSBC had an effective exposure of around HK$1million to HK$2 million which could have been covered if it had been requested by HSBC.

## Prepaid Insurance Policies

The Prepaid Insurance Premiums paid by HSBC on behalf of my wife and myself to a division of HSBC amounted to HK$5,371,945.50 which HSBC claims in its letter of December 15, 2015 it received back the amount of HK$4,513,390.50 on September 9, 2013 as surrender value from its request to its insurance division on September 3, 2013. The shortfall of HK$858,555.40 appears at this stage to have disappeared but still remains under question.

So HSBC would have offset the amount of HK$4,513,390.50 against the outstanding debt on September 9, 2013.

Using HSBC's numbers the outstanding debt would have then been HK$9,913,683.09 less the amount paid back of HK$HK$4,513,390.50 leaving a total due of HK$HK$5,400,292.59.

Using my numbers the amount due would be less since I would question the missing sum of HK$858,554.40. And I would attempt to obtain details on the amount guaranteed by the Hong Kong Government under its scheme to support small and medium enterprises in Hong Kong and received by HSBC.

And I am seeking a reconciliation of the amount of original amount claimed of HK$9,913,683.09 which appears to be overstated.

As said above the Petition states the Debtor (me) is justly and truly indebted to the Petitioner in the sum of HK$9,913,683.99. This is clearly a seriously false and misleading statement designed deliberately to mislead the High Court.

And as I have not been able to do an audit on any of these numbers I have just taken numbers from HSBC's written correspondence for the purposes of this letter.

But I have serious concerns about HSBC's conduct as follows;

1. I am concerned about the sum of HK$858, 554.40 which appears to have disappeared.
2. HSBC filed a request on June 16, 2013 for reimbursement of part of the HK Government loan guarantee portion. I do not know the amount but assess this to be around HK$2 million. This will have been used to pay off another portion of the original amount outstanding of HK$9,913,683.
3. I am concerned about the lack of reconciliation of the original sum of HK$9,913,683.

4. And I am concerned that HSBC filed a request for reimbursement of one of the Government Guarantee Loans on June 16, 2013 but waited until September 3, 2013 to recover from the insurance policies. Clearly there was a financial advantage to HSBC with respect to this unusual conduct, which also do doubt would have been to my disadvantage. And I do not know of when HSBC claimed reimbursement form the Government Secured policies.

The Creditors Petition filed with the High Court on February 13, 2014 also stated "The above mentioned debt was a liquidated sum payable immediately

and the Debtor appeared unable to pay it."

There is no mention of the two life insurance policies that HSBC had held as security of this facility which as detailed above cost a combined HK$5,371,945.90 in two tranches in June and August 2012. As explained above HSBC cancelled the insurance policies and received payments of US$245,737.51 and US$332, 902.31 (HK$4,513,292.59) on September 9, 2013. Leaving an amount of HK$5,400,029, with further discussions to be held on the missing HK$858,555.40.

Yet HSBC filed a Creditors Bankruptcy Petition to the High Court on February 13, 2014 stating the amount due was HK$9,913, 683,09 and it held no security covering that amount.

I have enclosed the following information about this case;

1. Brief History.
2. A SUMMARY OF OUR BANKING FACILITIES
3. Statutory Demand dated May 23, 2013
4. Creditors Bankruptcy Petition dated November 22, 2013, filed February 13, 2014
5. The Bankruptcy Order dated April 23, 2014 but with a date stamp of May 8, 2014.
6. HSBC's letter to me dated April 2, 2015
7. HSBC's letter to me dated December 15, 2015.

With respect to my wife Dr. Lam at this stage I have not been able to obtain the High Court or other documents relating to her being made bankrupt in the same manner by HSBC but I will follow up on that as well.

I have only made reference to my Official Complaints to the HKMA in this letter to the extent they cover the false and misleading documents without notice to me that were filed to the High Court.

As mentioned above I do not have a transcript of the High Court Hearings which if statements are made supporting the false documents would appear to be perjury. But I am attempting to obtain them if they are available.

I should be grateful for your review of this situation and would appreciate in the circumstances you would reverse the Bankruptcy Order.

Kind regards

Colvin Brown FCPA JP
852 62281633

Level 10, Units 5 and 7
Wing Fung Ind. Bldg
40-50 Sha Tsui Road
Tsuen Wan, NT
Hong Kong.

**FOR INFORMATION ONLY.**

## Brief History (including some reference to my Official Complaints against HSBC to the Hong Kong Monetary Authority)

### Colvin Brown FCPA, JP

I came to Hong Kong in 1974. In 1982 I established and was managing partner of two Hong Kong CPA firms both of which became top 12 CPA firms in Hong Kong.

I was appointed a JP for services to Hong Kong people in 1998.

In 1999 on the death of my biggest client I retired from my CPA firms and engaged in a restructuring of my deceased client's affairs on behalf of his estate. This was completed at the end of 2004.

During my professional career and between 1999 and 2004 I worked many times with HSBC's credit recovery division concerning troubled customers. During this time I was involved in saving HSBC from losses of many tens of millions of Hong Kong dollars.

All of the HSBC staff and management I worked with at the time are no longer with HSBC.

I obtained a very clear understanding of the way HSBC conducted itself in credit recovery and I supported it in its humane approach at that time.

This approach that I had always seen in the past had completely disappeared by the time I became a victim of HSBC.

South China Cosmetics Limited.

While I worked as a CPA I financially supported many businesses outside my CPA practices.

In 1990, we set up what became the BSC Group. This was a company that introduced to Hong Kong the business of operating standalone skincare centers and spas. In those days there were none in Hong Kong. Hotels did not have any spas and it was us that had to educate the police as what they were, as the Police at the time seemed to think they were massage parlors of which there were plenty in Hong Kong, most of dubious reputation.

I was not involved in management of these entities being in effect the financier but I knew the participants, suppliers and to a certain extent customers.

The BSC Group introduced Elemis to Hong Kong as its principal skincare brand in 1990.

Although there was a change in the names of the operating entities the business continued and Elemis was the principal brand through until 2011.

In 2008/9 the business (at the time operating under the name of Paua Group Limited) hit a downturn because of the management at the time over expanding outside Hong Kong at the same time as the 2008/9 economic crisis took place and was placed in liquidation.

Elemis was left with a bad debt of US$670,000 for unpaid product supplied.

Elemis management contacted me for help. They asked me if I would take over the distribution of Elemis products in Hong Kong and possibly PRC. If I agreed they (Elemis) would give me or a company of my choosing a distribution agreement for 10 years with an automatic rollover after the 10 years were up, subject to some minor conditions.

But to obtain this agreement I was requested to pay the US$670,000.

I had known the Elemis people involved for 20 years and knew the Hong Kong operating portion of Paua Group Limited was fine having had a successful history. And I also knew the profits to be gained from the 10 year Elemis contract would be in the vicinity of US$15 million. At the same time I knew we could introduce other complementary brands into our group and we could plan to make profits of around US$27.5 million over the next ten years.

We developed total business plans and budgets in effect to demonstrate this.

So I acquired the Hong Kong division from the liquidator of Paua Group Limited and set up the operations as South China Cosmetics Limited.

The amount of US$670,000 was paid by me to Cosmetics Limited, a subsidiary company of Steiner Leisure Limited, the parent company of Elemis.

This payment was completed by August 2011 and the distribution agreement was signed but back dated to June 30, 2011, at the request of Elemis.

Little did I know that Steiner Leisure Limited ("SLL"), a listed company on NASDAQ, was under pressure from Wall Street Brokers to deliver profit increases as it ("SLL") had also been damaged during the economic downturn of 2008/9.

And with that pressure, SLL believed that China was the last major opportunity for it so at board level they decided that they would take back the distribution agreement they had just signed with us and use the profits from it to finance expansion into China.

So the contact was deliberately broken some four months after signing it and SLL took over the Elemis distribution in Hong Kong and set up its own office.

We, of course, objected given the circumstances and ultimately took legal action against Elemis, SLL and Cosmetics for losses and damages but in the end had to withdraw because the legal fees were too high and the chances of success were considered doubtful by me.

These cost of these legal fees which amounted to around HK$3 million to HK$4 million, plus the loss of the Elemis distribution business, were the principal causes of our cash flow issues in 2012 which then brought HSBC into the picture.

This was the first time in my long career that I saw the dishonest and greed of big business.

The Hong Kong legal system offered us little protection or recourse in this matter, while the US legal system was not available to us.

While this was happening we were also actively introducing new skincare brands for our group to distribute as we had to replace the lost revenue and profits from Elemis as quickly as possible, and we signed up Visoanska, Sundari, Environ and were in negotiation with a number of others including Opale Monaco, Oztan, Promoitalia, and so once the short term cash shortage was dealt with the long term future looked very secure.

And we had budgets and business plans developed around the time of our legal case against SLL to show this and these plans were made available to HSBC.

HSBC front line staff was fully informed all the way on these issues, fully understood them and supported us.

The timing of all this disruption was from the end of 2011 through 2012 and into 2013.

HSBC

HSBC was our principal banker. We found the front line staff capable, helpful and supportive. They knew our case and we believed were caring and responsible

I summarize below the significant issues with respect to HSBC in the timeframe in which the events occurred which will be addressed in this report.

- In Mid-2012, my wife Dr. Lam and I approached HSBC to apply for a Government Secured Loan to help us deal with the disruption to our cash flow explained above and we were immediately diverted into a pre-approved in principle key-man insurance scheme, as the way to obtain the Government guaranteed secured loans approved.
- A summary of the bank facilities is attached.
- In the month of May 2013 HSBC destroyed our business as set out below
- And without either myself or my wife knowing about it HSBC filed bankruptcy petitions against both of us and caused great personal damages to us both. My wife was/is an Anaesthetist specializing in neuro surgery and now has difficulty obtaining work. She is surviving because of

some financial support from her family. We do not have funds for our 9 year old's school fees.

- This is because of the conduct of HSBC.
- As a FCPA and a JP I do have a degree of understanding of the standards expected of big business.
- The conduct of HSBC was unbelievably dishonest and as a consequence I have filed Official Complaints against HSBC for breach of banking conduct rules, regulations and laws with the Hong Kong Monetary Authority.
- And the Hong Kong Monetary Authority suggested I should consider filing a complaint against HSBC with the Commercial Crimes Bureau of the Hong Kong Police.
- How this will turn out I do not know. The HKMA have informed me it will still take time in its discussions with HSBC but I believe, if the HKMA is serious in enforcing the banking rules and regulations it has introduced, it will agree that those breaches were serious and will hold HSBC accountable.
- We had introduced a number of new brands to replace Elemis. HSBC front line staff was fully informed all the way on these issues, fully understood them and supported us.
- We had a facility of around HK$10 million of which more than half arose out of HSBC bundling. (Making facilities available on condition that other profitable facilities to the bank were taken up by the customer.)
- A significant portion of the balance was secured under the Hong Kong government Guarantee Scheme for Small and Medium Enterprizes.
- With the total facilities of around HK$10 million HSBC had a direct exposure of HK$1 million to HK$2 million which could have been covered if requested but it was not requested.
- But we got temporarily behind in the loan repayments because of the cash flow issues mentioned above although in early May 2013 we brought in new capital (at the request of HSBC) and informed HSBC we would bring the loans up to date by the end of May 2013.
- HSBC was not interested and within days took action against our business, freezing all our corporate and personal accounts, taking the balance of our new investor's funds and by its actions effectively closing all our

operating bank accounts. I believe HSBC backdated some documents to support its case during this period.

- With no bank accounts we could not operate.
- By the end of May 2013 in these circumstances our business had effectively collapsed.
- The destruction of our business by HSBC caused direct losses including our investment of approximately HK$100 million and creditors lost approximately HK$36 million and we lost future profits from 10 year distribution contracts in existence and planned amounting to HK$214 million.
- Because we had no bank accounts and no money and our business had collapsed everyone took action against us. We were evicted from our office and our home. Luckily I had air miles points and I was able to fly my wife and then 7 year old child out of Hong Kong to obtain support from her family in Australia.
- I have seen my now 9 year old son only 3 times since then.
- When I was evicted from our office I had to leave everything behind not having any money at all or any means to retain anything. The whole office was left behind. Office furniture, equipment and records.
- I had to trade my Rolex watch, a quite expensive gift from my wife, for HK$12,000 to get some money for food.
- When I was evicted from our home I had to sleep in a borrowed car in May Road for four nights until an ex-staff member found out about it and asked me to stay with their family which I did. So my phone numbers and address changed.
- Since then I have been effectively working on a claim against HSBC commencing with my Official Complaints to the Hong Kong Monetary Authority.
- I now live on money provided by the Hong Kong Social Services of around HK$4,800 a month.
- I can now hardly walk
- Because of the collapse of our business caused as a direct result of the conduct of HSBC I am now subject to a number of charges from the Official Receiver for corporate documents not being filed on the closure of our business because all our staff left and there was no one to file the documents.

- I now believe it is impossible to succeed in business as an SME in Hong Kong because of the anti-SME approach adopted by authorities and seemingly the banking and legal systems in Hong Kong.

Colvin Brown FCPA, JP

January 12, 2016

A SUMMARY OF OUR BANKING FACILITIES WITH HSBC.

I had banked with HSBC for some 40 years.

At May 31, 2012 our company had the following facility with HSBC.

- A term loan of HK$2.3 million commencing December 17, 2010 with a monthly instalment of HK$44,466. The amount outstanding at May 31, 2012 was approximately HK$ 1,461,168.

In April/May 2012 we approached HSBC for additional Government Secured term loans.

But we were informed that the support of HSBC would be conditional that we take out approved in principle insurance policies with HSBC Insurance with payment upfront premiums. Needing the facility we had no options but to accept.

So we received the following facilities:

- Term loans on June 1, 2012 of HK$2,200,000 and HK$1,620,000 with monthly instalments of HK$41,517 and HK$22,144 respectively. Of which the amount of US$288,389.48 (HK$2,249,438.31) was immediately transferred to settle the upfront insurance policy. This meant that under the Government Secured scheme for financing SME's we received a net of HK$1,570,562 rather than HK$2,200,000.
- Term loans on August 26, 2012 of HK$2,200,000 and HK$2,250,000 with monthly instalments of HK$41,517 and HK$30,755 respectively. Of which the amount of US$400,321.48 (HK$3,122,507.66 ) was immediately transferred to settle the upfront insurance policies. This meant that under the Government Secured scheme for financing SME's we received a net of HK$1,327,492 rather than HK$2,200,000.
- A summary therefore is that we received HK$4,400,000 under the Government Secured schemes and HK$3,870,000 under the financing of the insurance schemes.
- Whereas we wanted HK$4,400,000 but we had to take HK$8,270,000.

- And from the HK$8,270,000 HSBC took and paid to its Insurance division the sum totaling HK$5,371,945.97.
- So the net effect (after one instalment) was that we received HK$2,943,054 rather than HK$4,400,000 a shortfall of vital cash to us amounting to HK$1,501,945 and we had monthly instalments of HK$135,983 rather than HK$83,024
- None of this was major but was enough to hurt our corporate financing at a time when we need to increase our revenues and capital financing.

While we were not over happy at having the extra burden imposed on us by these schemes that increased our monthly instalments and reduced the money we had available for our working capital and we knew the Government secured facilities offered to us were conditional of us taking out the insurance policies which were profitable to HSBC we went along with it because we believed HSBC had confidence in our business and accepted the fact that we had unreasonably been abused in the Elemis saga and were supporting us.

In fact HSBC gave us a short term facility later to help with our cash flow while we introduced more revenues and capital which we were not able to meet repayment terms on at the time.

But here are the issues.

- HSBC breached its banking conduct rules by bundling facilities the way it did.
- These conditional insurance policies fell into the category of mis-selling in that they were a condition of obtaining additional credit.
- HSBC was profiteering by the diversion of some of the HK Government deferred loans to our company to its own account but there was little we could do about it.
- We believed that HSBC was supporting us while we were raising capital and increasing our revenue, neither of which was a difficult issue.

But in November/December 2012 just three months after we were granted the second facility we became concerned when we were informed that the

HSBC Credit Committee was now abusing the front office staff for the handling our account. And the HSBC Credit Committee would not meet with us in December 2012 and early January 2013 after originally agreeing to.

The fact that we introduced new sufficient new capital and informed HSBC only for HSBC to on receiving that news freeze and then close our bank accounts taking part of our new investors capital and destroy our business by breaching a host of rules, regulations and laws has caused the filing of Official Complaints with the HKMA.

And for the record on HSBC claimed in its Statutory Demand dated May 23, 2013 that it had no security. This is a false and misleading statement. At all times it had under its own control the two life insurance policies which it surrendered and the money received of US$245,737.51 and US$332,902.31 (HK$4,513,390.50) was paid to reduce the outstanding.

And in HSBC's Statutory Demand dated May 23, 2013 it states the amount outstanding was HK$9,913, 683.09. This amount has not been reconciled and would appear to be not correct. We are seeking a reconciliation.

And the conduct of the bank in destroying my company and bankrupting myself and my wife based on deliberate false documents and lack of notice of actions has provided a host of examples of banking conduct that does not reach the minimum standards necessary.

**STATUTORY DEMAND UNDER SECTION 6A(1)(a) OF THE BANKRUPTCY ORDINANCE
(CHAPTER 6) DEBT FOR LIQUIDATED SUM PAYABLE IMMEDIATELY**

**WARNING**
**注意**

- This is an important document. You must deal with this demand within 21 days of its service upon you or you could be made bankrupt and your property and goods taken away from you. Please read this demand and notes carefully.
- 此乃重要文件。台端必須於法定要求償債書送達　台端後二十一天內處理，否則
　台端將被下令破產，財產及物品將被沒收。請小心詳閱此償債書及附註。

- If you are in any doubt about your position, you should seek advice immediately from a solicitor.
- 倘若　台端對本身的處境有任何疑問，請即向律師尋求專業意見。

- There are additional notes below.
- 請參閱下述附註。

**DEMAND**

To　　　: BROWN, COLVIN MORTON (HKID No. XD638917(7))

Address : Unit 1A, 1/F, Regency Centre, Phase 1, 39 Wong Chuk Hang Road, Hong Kong.

This demand is served on you by the creditor –

Name　　: The Hongkong and Shanghai Banking Corporation Limited

Address : No. 1 Queen's Road Central, Hong Kong

The creditor claims that you owe the sum of HK$9,913,683.09, full particulars of which are set out on pages 2 and 3, and that it is payable immediately and, to the extent of the sum demanded, is unsecured.

The creditor demands that you pay the above debt or compound for it to the creditor's satisfaction.

Signature :

Name : Messrs. Mayer Brown JSM, Solicitors

Date :　23rd May 2013

Position with or relationship to creditor : Solicitors, duly authorised by the creditor to make this demand on behalf of the creditor.

28746242_1

Address : 18th Floor, Prince's Building, 10 Chater Road, Hong Kong.

Tel. No. : 2843 4510

Ref. No. : NSML/BB7/13/13428708

## PARTICULARS OF DEBT

| When Incurred | Description of Debt | Amount due as at the date of this demand |
|---|---|---|
| 9th May 2013, being the date of demand from the creditor for immediate payment | Pursuant to a Guarantee (Limited Amount) dated 21st December 2010 ("the 1st Guarantee"), executed by you in favour of the creditor, under which you guaranteed to pay to the creditor on demand all moneys and liabilities in any currency due owing or incurred by South China Cosmetics Limited ("the Company") to the creditor at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,300,000 together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the creditor in enforcing the 1st Guarantee on a full indemnity basis.<br><br>Pursuant to another Guarantee (Limited Amount) dated 30th April 2012 ("the 2nd Guarantee"), executed by you and Lam Kitman in favour of the creditor, under which you guaranteed to pay to the creditor on demand all moneys and liabilities in any currency due owing or incurred by the Company to the creditor at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,200,000 together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the creditor in enforcing the 2nd Guarantee on a full indemnity basis. | HK$9,913,683.09, details as per the attached statement of account |

- 2 -

28746242_1

Pursuant to another Guarantee (Unlimited Amount) dated 30th April 2012 ("the 3rd Guarantee"), executed by you and Lam Kitman in favour of the creditor, under which you guaranteed to pay to the creditor on demand all moneys and liabilities in any currency due owing or incurred by the Company to the creditor at any time, actually or contingently, in any capacity, alone or jointly with any other person together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the creditor in enforcing the 3rd Guarantee on a full indemnity basis.

Pursuant to another Guarantee (Limited Amount) dated 25th July 2012 ("the 4th Guarantee"), executed by you and Lam Kitman in favour of the creditor, under which you guaranteed to pay to the creditor on demand all moneys and liabilities in any currency due owing or incurred by the Company to the creditor at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,200,000 together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the creditor in enforcing the 4th Guarantee on a full indemnity basis.

By a letter dated 9th May 2013 from the creditor to you, the creditor, pursuant to the 1st, 2nd, 3rd and 4th Guarantees demanded you payment of the then indebtedness of the Company. Despite the said demand, you have failed and still fail to pay to the creditor the said indebtedness or any part thereof.

## Part A
### Appropriate court for setting aside demand

Any application by you to set aside this demand should be made to the Court of First Instance.

- 3 -

28746242_1

**Part B**

The person or persons to whom any communication regarding the demand may be addressed is/are

Name    : Messrs. Mayer Brown JSM, Solicitors

Address : 18th Floor, Prince's Building, 10 Chater Road, Central, Hong Kong.

Tel. No. : 2843 4510

Ref. No. : NSML/HB7/13/13428708

**Part C**

For completion if the creditor is entitled to the debt by way of assignment.

| | Name | Date(s) of Assignment |
|---|---|---|
| Original Creditor | | |
| Assignees | | |

**How to comply with a statutory demand or have it set aside**

If you wish to avoid a bankruptcy petition being presented against you, you must pay the debt set out on page 1 of this notice within the period of 21 days of service upon you. Alternatively, you can attempt to come to a settlement with the creditor. To do this you should –

- inform the person or persons (or one of the persons) named in Part B above immediately that you are willing and able to offer security for the debt to the creditor's satisfaction; or
- inform the person or persons (or one of the persons) named in Part B immediately that you are willing and able to compound for the debt to the creditor's satisfaction.

If you dispute the demand in whole or in part you should –

- contact the person named in Part B immediately.

If you consider that you have grounds to have this notice set aside or if you do not receive a satisfactory written reply from the person or persons (or one of the persons) named in Part B before the expiration of 18 days after the service you should –

- apply without delay to the Court of First Instance to have the notice set aside.

Remember:   You have only 21 days from the date of service on you of this document before the creditor may present a bankruptcy petition.

- 4 -

28746242_1

## STATEMENT OF ACCOUNT

Re:   BROWN, COLVIN MORTON

Banking Facilities under the name of South China Cosmetics Limited
Account Nos. 400-654075-034, 400-654075-035, 400-654075-036,
400-654075-037, 400-654075-038 and 400-654075-039:-
Total outstanding indebtedness up to and including 23rd May 2013

| Loans | Principal | Interest accrued | Total |
|---|---|---|---|
| 400-654075-034 | HKD1,444,677.10 | HKD13,589.27 | HKD1,458,266.37 |
| 400-654075-035 | HKD1,927,160.80 | HKD13,177.17 | HKD1,940,337.97 |
| 400-654075-036 | HKD1,459,531.50 | HKD4,800.19 | HKD1,464,331.69 |
| 400-654075-037 | HKD2,028,181.20 | HKD15,297.94 | HKD2,043,479.14 |
| 400-654075-038 | HKD2,129,888.60 | HKD12,897.91 | HKD2,142,786.51 |
| 400-654075-039 | HKD849,076.80 | HKD15,404.61 | HKD864,481.41 |
| Total : | | | HKD9,913,683.09 |

Interest has accrued and continues to accrue at default interest rate (i.e. 8% per annum over
the creditor's HK dollar best lending rate, currently 5% per annum, but subject to fluctuation
at the creditor's discretion) from 24th May 2013 until payment.

28746242_1

ANNEX E    

HCB *106*/~~2013~~ 2014

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

IN BANKRUPTCY PROCEEDINGS NO. *106* OF ~~2013~~ 2014

RE: BROWN, COLVIN MORTON

(Hong Kong Identity Card No.XD638917(7))

EX PARTE  : THE HONGKONG AND SHANGHAI
BANKING CORPORATION LIMITED

---

### CREDITOR'S BANKRUPTCY PETITION

Based on failure to satisfy a
statutory demand not served personally

---

We, The Hongkong and Shanghai Banking Corporation Limited ("the Petitioner") whose head office is situated at No.1 Queen's Road Central, Hong Kong, by CHAN KAM SIU, a Senior Loan Management Manager of Asia Pacific Risk of Level 31, HSBC Main Building, No.1 Queen's Road Central, Hong Kong duly authorized in writing under the seal of the Petitioner to sign and present this Petition HEREBY petition the Court that a Bankruptcy Order be made against BROWN, COLVIN MORTON (Hong Kong Identity Card No. XD638917(7)) (hereinafter called "the Debtor") of (1) Unit 1A, 1/F, Regency Centre, Phase 1, 39 Wong Chuk Hang Road, Hong Kong and (2) Flat 01, 5/F, Block 1, May Tower, 5-7 May Road, Central, Mid-Level, Hong Kong and say as follows:-

1.        That the Debtor is domiciled in Hong Kong.

2.        That the Debtor is justly and truly indebted to the Petitioner in the sum of HK$9,913,683.09 as at 23rd May 2013 together with further interest accruing thereafter at default interest rate (i.e. 8% per annum over the Petitioner's HKD best lending rate, currently 5% per annum, but subject to fluctuation at the Petitioner's discretion) until payment, being the Debtor's liabilities under:-

(i)        a Guarantee (Limited Amount) dated 21st December 2010 ("the 1st Guarantee"), executed by the Debtor in favour of the Petitioner, under which the Debtor guaranteed to pay to the Petitioner on demand all moneys and liabilities in any currency due owing or incurred by South China Cosmetics Limited ("the Company") to the Petitioner at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,300,000 together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the Petitioner in enforcing the 1st Guarantee on a full indemnity basis;

(ii)       a Guarantee (Limited Amount) dated 30th April 2012 ("the 2nd Guarantee"), executed by the Debtor and Lam Kitman in favour of the Petitioner, under which the Debtor guaranteed to pay to the Petitioner on demand all moneys and liabilities in any currency due owing or incurred by the Company to the Petitioner at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,200,000 together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the Petitioner in enforcing the 2nd Guarantee on a full indemnity basis;

(iii)     a Guarantee (Unlimited Amount) dated 30th April 2012 ("the 3rd Guarantee"), executed by the Debtor and Lam Kitman in favour of the Petitioner, under which the Debtor guaranteed to pay to the Petitioner on demand all moneys and liabilities in any currency due owing or incurred by the Company to the Petitioner at any time, actually or contingently, in any capacity, alone or jointly with any other person together with interest on such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the Petitioner in enforcing the 3rd Guarantee on a full indemnity basis; and

(iv)     a Guarantee (Limited Amount) dated 25th July 2012 ("the 4th Guarantee"), executed by the Debtor and Lam Kitman in favour of the Petitioner, under which the Debtor guaranteed to pay to the Petitioner on demand all moneys and liabilities in any currency due owing or incurred by the Company to the Petitioner at any time, actually or contingently, in any capacity, alone or jointly with any other person to the extent of HK$2,200,000 together with interest on

such moneys (both before and after any demand or judgment) until the date of payment as well as expenses of the Petitioner in enforcing the 4th Guarantee on a full indemnity basis.

3.        The above-mentioned debt is for liquidated sum payable immediately and the Debtor appears to be unable to pay it.

4.        On 9th July 2013, a statutory demand in respect of the above-mentioned debt was served on the Debtor by advertising in The Standard, a newspaper widely circulated in Hong Kong and also by posting the same by ordinary post to the Debtor's last known address at Unit 1A, 1/F. Regency Centre, Phase 1, 39 Wong Chuk Hang Road, Hong Kong on 9th July 2013. A copy of which was also sent by ordinary post to Flat 01, 5/F, Block 1, May Tower, 5-7 May Road, Central, Mid-Level, Hong Kong on 1st November 2013. To the best of our knowledge and belief, the Debtor has neither complied with nor set aside the statutory demand in accordance with the relevant rules and there is no outstanding application to set aside the statutory demand.

5.        That we do not, nor does any person on our behalf hold any security on the estate of the Debtor, or any part thereof, for the payment of the above-mentioned sum.

Dated the 22nd day of November 2013

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED

_____

CHAN KAM SIU duly authorized under the seal of
the said The Hongkong and Shanghai Banking Corporation
Limited to sign and present this Petition in the
presence of :-

Nancy Siu Man Leung
Mayer Brown JSM
Solicitor, Hong Kong SAP

HCB *1067* /2013 2014

## ENDORSEMENT

This Petition having been presented to the Court on the **1 3 FEB 2014** day of ~~2013~~, it is ordered that this Petition shall be heard at the High Court Building, 38 Queensway, Hong Kong on Wednes day the 23rd day of *April* 2014 at 10:30 o'clock in the *fore* noon before Master

And you, the said BROWN, COLVIN MORTON, are to take notice that if you intend to show cause against the Petition you must file with the Official Receiver a notice showing the grounds upon which you intend to show cause, and post a copy of the notice to the Petitioner or their solicitors, in each case 3 days before the day on which the Petition is to be heard.

Dated the **1 3 FEB 2014** day of ~~2013~~

Registrar

MAYER BROWN JSM
Solicitors for the Petitioner

NSML/HB7/13/13428708

ANNEX F

HCB 1067/2014

-8 MAY 2014   IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

IN BANKRUPTCY PROCEEDINGS NO. 1067 OF 2014

.RE       : BROWN, COLVIN MORTON
            (Hong Kong Identity Card No.XD638917(7))

EX PARTE  : THE HONGKONG AND SHANGHAI
            BANKING CORPORATION LIMITED

BEFORE MASTER H. AU-YEUNG OF THE HIGH COURT IN COURT

BANKRUPTCY ORDER

ON THE PETITION dated 22nd November 2013 of The Hongkong and Shanghai
Banking Corporation Limited, whose head office is situate at No. 1 Queen's Road Central, Hong
Kong, a Creditor, filed herein on 13th February 2014 AND UPON READING the said Petition,
the Affirmation of Chan Kam Siu filed herein on 14th February 2014, the Affirmation of Kam
Chak Wing together with exhibits filed herein on 13th February 2014, the Second Affirmation of
Kam Chak Wing together with exhibits filed herein on 13th February 2014, the Third
Affirmation of Kam Chak Wing together with exhibits filed herein on 13th February 2014, the
Fourth Affirmation of Kam Chak Wing together with exhibits filed herein on 13th February
2014, the Fifth Affirmation of Kam Chak Wing filed herein on 13th February 2014, the Sixth
Affirmation of Kam Chak Wing together with exhibits filed herein on 13th February 2014, the
Seventh Affirmation of Kam Chak Wing together with exhibits filed herein on 7th March 2014,
the Eighth Affirmation of Kam Chak Wing together with exhibits filed herein on 24th March
2014 and the Certificate for proof of existing debt in bankruptcy proceedings dated 23rd April
2014 AND UPON HEARING the Solicitors for the Petitioner and the BROWN, COLVIN
MORTON ("the Debtor") being absent.

IT IS ORDERED that BROWN, COLVIN MORTON (Hong Kong Identity Card No.
XD638917(7)) of (1) Unit 1A, 1/F, Regency Centre, Phase 1, 39 Wong Chuk Hang Road, Hong
Kong and (2) Flat 01, 5/F, Block 1, May Tower, 5-7 May Road, Central, Mid-Level, Hong Kong

be adjudged bankrupt and the Official Receiver hereby becomes the provisional trustee of the estate of the said Debtor.

AND IT IS FURTHER ORDERED that the costs of the Petitioner of the said Petition be taxed and paid out of the estate of the Debtor.

Dated the 23rd day of April 2014

Registrar

Note:     The abovenamed Debtor is required, after the service of this Order upon him, to attend the trustee at such time and place as the trustee may specify.

## ENDORSEMENT ON ORDER

The name and address of the Solicitors for the Petitioner are Messrs. Mayer Brown JSM of 18th Floor, Prince's Building, No.10 Chater Road, Central, Hong Kong.



Our Ref: 40713109

**Confidential**

**BY POST AND BY EMAIL (colvin.brown@schinac.com)**

Unit 7 10/F
Wing Fung Industrial Building
40-50 Sha Tsui Road
Tsuen Wan
New Territories
Attn. Mr Brown Colvin Morton

2 April 2015

Dear Mr Brown

We refer to your written allegations to the Hong Kong Monetary Authority as forwarded to us, a copy of which is enclosed. The response to these allegations will, where appropriate, be included as part of an investigation report being prepared by us for the Hong Kong Monetary Authority. The investigation report arose out of earlier complaints that you have made to the Authority.

We set out in this letter our final response to you in respect of each of your allegations. Given that your enclosed written allegations contain largely a repetition of many of the earlier complaints against us, reference is made to our previous written responses to you in connection with your allegations dated 26 August 2014, 22 October 2014  24 December 2014 which are also enclosed for your ease of reference.

We adopt the numbering used in your enclosed written allegations.

1.  We deny that we have in any way caused you, your wife, Dr. Lam, or the company, South China Cosmetics Limited (the "Company") any loss whatsoever.  We deny that our conduct was illegal, immoral, careless or irresponsible nor have we acted in any manner other than as a reasonably prudent banker. We would also point out that our exposure at the relevant time was approximately HKD10 million and not between HKD1 million to HKD2 million.

2.  In our view, you were fully aware of and understood the cash flow implications on the Company with respect to the premium financing repayment obligations. This is evidenced by the fact that you represented to us that you are a sophisticated and experienced businessman, a skilled accountant with many years of corporate experience. Furthermore, the Company made separate applications to take out universal life insurance policies and the corresponding premium financing facilities with respect to the universal life insurance policies first for your wife and two months later, for yourself. You did not raise any cash flow issues arising from the universal life insurance policies after the policies were taken out in 2012 and payments made.

2.1 We deny that we diverted the Government guarantee loans balances as income for HSBC Life (International) Limited ("HSBC Life"). The Government Guarantee Loans were advanced by HSBC and subject to our normal lending assessments. We expect the customers to repay those loans in accordance with their tenor and not to have recourse to the partial Government guarantee. The fact that a portion of the loans may be guaranteed by the Government is besides the point. Once HSBC advanced the monies to the Company, HSBC would only debit  funds from the

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



Company's account to pay for the premiums of the universal life insurance policies payable by the Company under the instruction of the Company.

2.2 Based on the terms of the universal life insurance policies which you on behalf of the Company considered and agreed to, the premiums paid are in the sums of HKD2,249,438.31 and HKD3,122,507.66 with respect to the policies for your wife, Dr. Lam and you.

2.3 Denied. At all relevant times, you, your wife or the Company were not restricted from obtaining the same or other insurance products from any of our competitors. Furthermore, cooling off periods were given as in the ordinary course allowing customers to withdraw from the products purchased.

2.4 The monthly loan instalments of the Company were increased given the Company elected to apply for premium financing facilities to fund its premium payment obligations under the universal life insurance policies for you and your wife, Dr. Lam. Other payment options such as cash payment was also available.

2.5 Please refer to our response in paragraph 2.1 above.

2.6 We deny your assertions against the Bank and make no comment to your speculative statements.

3. You acknowledged receipt of the statutory demand issued against you by your email to John Hickin of Mayer Brown JSM dated 9 August 2013. You have stated that you are a professional accountant who had been involved in work-out situations for many years, in which case you would have clearly understood the potential consequence of failing to honour a statutory demand. In fact, the statutory demand itself was clear that bankruptcy proceedings may be issued against you if the statutory demand remains unsatisfied. We deny any false or misleading statements had been made in the bankruptcy proceedings issued against us. Service of the statutory demand and the bankruptcy petition issued against you and the conduct of the bankruptcy proceedings were in accordance with all relevant legal and procedural requirements under Hong Kong laws. As the Company has been placed in liquidation and your estate has been sequestrated, please raise any objections you may have with respectively, the Company's liquidator and/or your trustee in bankruptcy, as any rights that the Company and/or you had against HSBC has now vested in them.

4. Denied. At all relevant times, we requested for concrete and viable repayment plans for us to consider future prospects of the Company. A total of HKD 1.9 million was deposited into the Company's account. This amount would in any event not have been sufficient to bring the Company's repayment obligations up to date given that a large portion of the HKD 1.9 million (if not the entirety of it) were used within 3 days of deposit to pay for operational expenses of the Company. In other words, much of the funds deposited by the investor (together with cash receipts) were used by the Company and not taken by HSBC. The Company failed to provide us with sufficient comfort on the on-going repayment ability of the Company. Consequently, we exercised our legal rights to protect our interests. As at the date on which we exercised our rights of set-off, the Company's account stood at HKD461,000.

5. Please refer to our responses above. In addition, we maintain that we legitimately exercised our set-off rights over you, your wife and the Company's accounts. We have demonstrated our support and indulgence by allowing for payments from the Company's account to discharge payment obligations on your requests.

We do not consider our employee, Donna Duke's prior involvement with your business to be relevant in your complaint or prejudicial to the whole incident.

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



6. We do not respond to any allegations which are unsubstantiated and/or not particularised. We deny any false or misleading statements have been made or that there was any back-dating of any documents. Please refer to our responses above and our earlier written responses enclosed.

7. We do not respond to any allegations which are unsubstantiated and/or not particularised. Please refer to our responses above.

8. We do not respond to any allegations which are unsubstantiated and/or not particularised. Please refer to our responses above and our earlier written responses enclosed.

9. Please refer to our responses above. Please raise your objections with the Company's liquidator and/or your trustee in bankruptcy.

10. We do not respond to any allegations which are unsubstantiated and/or not particularised. We maintain that our team members discharged their responsibilities in a fair and professional manner.

Yours faithfully,

Mary Poon
Manager Quality Service Management
Commercial Banking

cc HKMA

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



Our Ref: 40713109

**Strictly Private & Confidential**

**BY POST**
Mr Colvin Morton Brown
Unit 7 10/F
Wing Pung Industrial Building
40-50 Sha Tsui Road
Tsuen Wan
New Territories

15 December 2015

Dear Sir

We write further to your recent written allegations to the Hong Kong Monetary Authority.

We have previously responded to your allegations directed at us on a number of occasions in relation to South China Cosmetics Limited (the **"Company"**). Also, we are not in the position to comment on your specific questions to the Hong Kong Monetary Authority. However, we feel it necessary to put on record to clarify and correct some factual background and to reiterate our position.

We set out in this letter our final response to you in respect of each of your allegations. Given that your enclosed written allegations contain largely a repetition of the earlier complaints against us, reference is made to our previous written responses to you in connection with your allegations dated 26 August 2014, 22 October 2014, 24 December 2014 and 2 April 2015 which are also enclosed for your ease of reference.

We adopt the numbering used in your enclosed written allegations subject titled "Allegation 11 – My Specific Questions".

1.  The Standard is generally recognised as an official and widely circulating newspaper. It is:

    - often used by the Official Receiver in advertising winding-up and bankruptcy related court documents – we enclose here in Annexure 1 copies of the Standard for your reference;

    - often used by other government authorities and agencies, including the Hong Kong Police and the Transport Department for advertising legal and other important notices - we enclose here in Annexure 2 copies of the Standard for your reference; and

    - free of charge which is also why it is often used in bankruptcy and liquidation cases as a more effective forum to try to reach those audience who may not have sufficient funds, to subscribe to paid newspapers.

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



Separately and for record purposes, in addition to advertising in the Standard, the statutory demands were issued against you by various methods and you had previously confirmed the fact you had already received the relevant statutory demands in your email dated 29 July 2013 to HSBC and also in your email dated 9 August 2012 to John Hickin of Mayer Brown JSM in which you expressly stated that:

*"I'm not sure why you sent the attachments though. To my understanding there was never any doubt that they had been previously received"*.

Further, we note that despite comments from other official authorities, you have till this date, not appealed to court to dispute the services of statutory demand and bankruptcy petitions or the amount of indebtedness with supporting evidence.



2.   We reiterate that we did not divert the Government guarantee loans balances as income for HSBC Life (International) Limited ("**HSBC Life**"). Please refer to paragraph 2.1 of our letter response to you dated 2 April 2015 as well as our earlier written responses enclosed rebutting this allegation.

3.   As is the case with any large organisation, issues that arise in relation to the operation of the Bank are, depending on the type of issue, delegated to and dealt with by the relevant responsible departments of the Bank that have the relevant expertise and knowledge. Contrary to your allegation, senior representatives of the relevant department of HSBC that are responsible for handling situations like yours did meet with you. In fact, Ms Alison Chang and Ms Donna Duke did respectively meet with you on 29 May 2013 and 2 August 2013.

Conversely, we understand that you had refused to meet with PricewaterhouseCoopers who was conducting an independent review of your case as instigated by your complaint. Please refer to our earlier written responses enclosed.

4.   In respect of the new investors' monies, we had addressed your allegation various times in our previous responses. Please refer to paragraph 4 of our letter dated 2 April 2015. We reiterate and further stress that, in summary:

   •   At all relevant times, we requested for concrete and viable repayment plans.

   •   The Company used up most of the funds deposited by the investor within 3 days to pay for its own operational expenses – they were not taken by HSBC.

   •   You and the Company were not forthcoming with the requested repayment plan or other relevant information surrounding the business status and repayment ability of the Company.

5.   As responded previously, we maintain that our team members discharged their responsibilities in a fair and professional manner. Please refer to our earlier written responses enclosed.

6.   Please refer to our responses above and in our letter dated 26 August 2014 as well as our earlier written responses enclosed.

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk

# HSBC ◆X◆

7. We consider that Mr. McKeown's email dated 16 July 2013 aimed to and did respond and address your issues as raised in your email dated 9 July 2013 at the relevant time.

8. Your allegation of ulterior motive is unsubstantiated. Prior to the meeting, HSBC had already issued various demand letters and exercised its right of set off as previously reiterated on various occasions. The meeting was a final effort by the relevant handling Bank officers at that time to give you an opportunity to provide the Bank with a viable repayment plan as requested.

   However, based on the result of the meeting (including your indication that you were not to introduce the purported new investor to HSBC), it was believed that there was no clear indication of repayment assurance, meaningful repayment plan or any certainty with regard to the Company's business continuity. The service of statutory demands after the communication breakdown at the meeting was consistent with the prior actions and indications given by the Bank.

   Further, we stress that notwithstanding the attempted service, HSBC in the end agreed, as a final indulgence, to accommodate your request to hold off further legal action for another week based on your assurance to provide a repayment proposal. No repayment proposal was provided.

9. In relation to your unsubstantiated and speculative comment about certain unnamed HSBC frontline staff, we are not aware of your allegations and are unable to confirm the individuals who you purport to refer to or comment on your speculation. We consider this allegation unsupported, irrelevant.

10. We consider your statement misconstrued, incorrect and unsubstantiated.

11. In relation to your allegation concerning the remuneration of certain individuals and the department, whilst we do not disclose confidential information pertaining to the Bank or its employees, we confirm that there is no conflict of interest in this regard.

12. Please refer to paragraphs 1 and 5 in our letter dated 2 April 2015. Further, based on the information from the trustees in your bankruptcy estate, we understand that you had personal assets (including landed property in Australia). It seems that you concealed this fact both in your complaints as well as the statement of affairs you filed in relation to your bankruptcy proceedings.

13. Please refer to paragraphs 2 to 2.6 in our letter dated 2 April 2015. We further stress that no such condition was imposed by the Bank at all times.

14. The insurance policies were surrendered by HSBC Life on 3 September 2013 at the request of the Bank as assignee in exercising its rights to enforce security to repay the Company's debts. Letters dated 9 September 2013 were sent by HSBC Life to the Company (c/o you and Ms Lam respectively) notifying the details of the surrender (including the surrender value of USD 332,902.31 and USD245,7373.51 respectively at the relevant time). Enforcement of the security was consistent with what was stated in the previous demand letters made by the Bank.

15. Please see above paragraph 14.

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



16. Your statement in relation to the insurance premiums being partial security is conceptually incorrect. Premiums are paid to purchase the life insurance policies and are different from the life insurance policies themselves, which may have a different value at different points in time.  The Bank has never denied that it holds the relevant insurance policies as security.

17. Your allegation is misleading and biased. Our notification to the Government is made pursuant to the time limit prescribed by the relevant requirements and guidelines under the SME Loan Guarantee Scheme (i.e. six months after the earliest relevant repayment date of the defaulted loan) under which the Bank must submit the request in order to lodge a claim - please refer to the government website in this regard.

    By 18 June 2013, the Company has been in default for close to a six month period, notwithstanding previous restructuring effort and indulgence offered by the Bank.

    In some instances, in the event that an agreement is subsequently reached between the Bank and their customers, the claim can be withdrawn. However, in this case, for reasons mentioned paragraphs 4 and 21 in this letter and our previous written responses, it was commercially unjustifiable for the Bank to continue supporting the Company without any viable debt repayment assurance.

18. Please see above paragraph 4.

19. Process of court documents and the conduct of legal proceedings are subject to prescribed practice and procedure set out in the prevailing legislation and practice directions under Hong Kong laws. The relevant prescribed practice and procedure were followed. Please also refer to above paragraph 1 and paragraph 3 of our letter dated 2 April 2015 as well as our earlier written responses enclosed.

20. Please refer to above paragraph 19.

21. We consider the statements contained in your last paragraph (again numbered as 19), unsubstantiated, false, misconstrued and misleading. Please refer to our earlier written responses enclosed.

    At the relevant times, a commercial decision was made by the Bank not to continue supporting the Company's business, having considered and evaluated a number of factors, including:

    - the credit history and rating of the Company and repeated indulgence previously given by the Bank;

    - business viability without its cornerstone brand; and

    - your and the Company's readiness (or the lack thereof) to provide concrete and viable repayment plans and accurate, credible and complete relevant information.

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk



Finally, please be reminded that the Company has been placed in liquidation and your estate has been sequestrated, please raise any objections you may have with respectively, the Company's liquidator and/or your trustee in bankruptcy, as any rights that the Company and/or you may have had against HSBC has now vested in them.

Yours faithfully,

Mary Poon
Vice President Business Banking
Quality Service Management
Commercial Banking

Encl.

cc Hong Kong Monetary Authority

The Hongkong and Shanghai Banking Corporation Limited
GPO Box 64, Hong Kong
Swift: HSBCHKHH
Telegrams: Hongbank Hongkong
Website: www.hsbc.com.hk