

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS
F. #2009R02380

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 31, 2017

BY ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. HSBC Bank USA, N.A. and HSBC Holdings PLC
                 Criminal Docket No. 12-763 (AMD)

Dear Judge Donnelly:

      Pursuant to the Court's July 1, 2013 Order directing the government to file quarterly reports regarding the implementation of the deferred prosecution agreement ("DPA") in the above-captioned matter, the government submits this status report.

      On February 9, 2017, the independent corporate compliance monitor, Michael G. Cherkasky (the "Monitor"), submitted his Third Annual Follow-Up Review Report (the "Report"). As directed by the DPA, the Report reviews HSBC's anti-money laundering ("AML") and sanctions compliance program and describes areas of progress as well as those needing improvement.

      The Report has five primary sections. First, the Report sets forth the Monitor's findings with respect to HSBC's Group-level enhancements to its AML and sanctions compliance program. Second, the Report provides the Monitor's assessment of eleven of HSBC's country operations, including: Argentina, Bangladesh, China, Germany, Italy, Malaysia, Singapore, Taiwan, the United Kingdom, the United States, and Uruguay. Third, it describes the Monitor's thematic reviews of the bank's trade finance, correspondent banking, and private banking business lines. Fourth, the Report details the Monitor's interim findings with respect to two special projects he has undertaken. Finally, the Monitor issues recommendations and measures HSBC's progress in satisfying previously issued recommendations.

The Honorable Ann M. Donnelly
March 31, 2017
Page 2

        Throughout the Report, the Monitor highlights a number of key areas in which HSBC has made progress. For example, with respect to sanctions compliance, HSBC has improved the design of its program by: a) developing more comprehensive sanctions policies and procedures; b) increasing available resources for sanctions compliance; c) expanding the scope of customer and transaction screening; d) centralizing alert adjudications; and e) implementing an improved sanctions screening risk assessment methodology.

        HSBC also upgraded its sanctions compliance technology. The bank deployed a new sanctions screening method against which the entire customer base will be re-screened for potential sanctions issues. Furthermore, software enhancements to the transaction screening system now provide the bank with the ability to detect payments that are resubmitted after previously triggering alerts.

        With respect to AML controls, HSBC continues to work toward improving its program. For example, the bank implemented improved global AML policies and procedures that aim to provide an effective framework for detecting and preventing potential money laundering offenses. The global AML policy is markedly improved in content and clarity from previous policies in that it focuses on high-level policy requirements that cover key AML processes and risks. Furthermore, increased precision and detail in HSBC's global AML, customer due diligence, and transaction monitoring procedures are improving the consistency of the bank's requirements across its many offices.

        Finally, HSBC has successfully implemented a framework for using compensation to incentivize compliance. For example, the bank appropriately adjusts compensation downward for personal transgressions and even terminates employees under certain circumstances.

        Yet despite these and other accomplishments, the Report finds that the bank's AML and sanctions compliance program still struggles. The Monitor notes several areas of concern including: a) the quality of the data that the bank relies upon to detect money laundering and sanctions risks; b) the transaction monitoring systems that the bank relies upon to flag risky transactions; c) the implementation of sanctions controls at the country level; d) the adjudication of alerts; e) the risk assessment tools used across the Group; and f) the maturity and sufficiency of the compliance program both from a resources and an organizational perspective.

        For example, the Report states that the Group's AML transaction monitoring system lacks sufficient AML typologies and is hampered by persistent rules that automatically suppress transaction-monitoring alerts. The Report expresses concern that, even after the rollout of several planned remediation projects, the bank will still not control for all AML red flags.

        Additionally, although HSBC is the world's leading trade finance bank, and despite a poor review of the bank's trade finance business by the Monitor in 2015, the Report finds that financial crime compliance controls for trade finance transactions are lacking. Similarly, significant financial crime risks remain inherent in the correspondent banking business

The Honorable Ann M. Donnelly
March 31, 2017
Page 3

line.  Finally, systemic programmatic issues continue to put the bank at risk of potential financial crime.

       As a result of the Monitor's foregoing concerns and others, he remains unable to certify that the bank's compliance program is reasonably designed and implemented to detect and prevent violations of AML and sanctions laws.  Nor can the Monitor currently certify that HSBC has implemented and adhered to all of the remedial measures outlined in paragraph 81 of Attachment A of the DPA.

       The Monitor substantially completed the Fourth Annual OFAC Compliance Review as required by the Federal Reserve Board Cease and Desist Order, and on March 24, 2017, he submitted the Fourth Annual OFAC Compliance Review Report.  Besides setting forth the Monitor's findings and assessments stemming from the review, the OFAC Compliance Review Report presents nine recommendations for the improvement of HSBC Group's sanctions compliance program.  Additionally, the Monitor continues to work on a supplement to the Fourth Annual OFAC Compliance Review Report, which will be issued on June 30, 2017.

       The Monitor's work for the Fourth Annual Follow-up Review is underway.  The first phase—reviewing operations in India, Mexico, and Bermuda—recently commenced and walkthrough presentations took place from March 13-17, 2017.  The second phase—reviewing operations in the Philippines, Bahrain, and Sri Lanka—has also commenced, and walkthrough presentations are scheduled to take place in these three countries in April.  The third and fourth phases of the Monitor's workplan will consist of reviews of the operations of Hong Kong, Malta, South Korea, the United Arab Emirates, and Canada.

The Honorable Ann M. Donnelly
March 31, 2017
Page 4

       The government continues to closely monitor HSBC's compliance with the DPA terms.  The government notes that HSBC continues to show a commitment to meeting its obligations under the DPA, and the government is unaware of any issues that require the Court's intervention at this time.

                              Respectfully submitted,

                              BRIDGET M. ROHDE
                              Acting United States Attorney

By:    /s/ Alexander A. Solomon
        Alexander A. Solomon
        Julia Nestor
        David K. Kessler
        Assistant U.S. Attorneys

        M. KENDALL DAY
        Chief, Asset Forfeiture and
        Money Laundering Section
        Criminal Division
        United States Department of Justice

By:    /s/ Laura Billings
        Laura Billings
        Trial Attorney

cc: All Counsel of Record (via ECF)